[Filed December 19, 1888.]

# B. W. HUSTON ET AL., APPELLANTS, v. WILLIAM BYBEE, RESPONDENT.

ADVERSE POSSESSION MUST BE HOSTILE TO OTHER USE. — An adverse, exclusive, and uninterrupted use and enjoyment by one person, and those under whom he claims, of all the water of a creek taken therefrom by means of a ditch, and conveyed to certain mining grounds for mining purposes, for twelve years, or for any period beyond that of the statute of limitations prescribing the time in which entry shall be made upon real property, will bar the owner of the land through which the creek runs of his riparian rights; but where the ditch was constructed, by means of which the water was originally appropriated, under a license granted by the owner of the land, in which he reserved the right to use the water a part of each year for his own purposes, such adverse use by grantees from the original appropriator cannot be established, unless it is shown that the use of the water by them has been in hostility to the use of it by the owner of the land under such reservation.

ID. — The users of the water, in such case, must show that their use of it was in defiance of any right upon the part of the owner to use it for any purpose; that they totally ignored his right to use it at all, and that he acquiesced therein.

FORFEITURE — VIOLATION OF CONDITION ON WHICH FORFEITURE CLAIMED — MUST BE ASSERTED ACTIVELY. — To authorize a person to claim a forfeiture of valuable property rights on account of the violation of a condition upon which they are granted, he must proceed to enforce it at once. He cannot remain passive for a long time after acts have transpired upon which others have relied in matters of importance to them, and then insist upon the forfeiture in consequence thereof.

RUNNING WATER — USE OF FOR IRRIGATING LAND, ETC. — AFTER USE — CONTRACT CONSTRUED. — Where a certain stream of water ran across the land of B., which he was accustomed to use for the purposes of irrigation, for watering his stock, and for domestic use, and which was valuable and necessary for such uses, and he was applied to by one S. for permission to dig a ditch across his land, in order to conduct the water of the stream to certain mining grounds below, upon which S. was engaged in mining, and B. granted the permission upon the promise of S. that the former should have the exclusive use of the water flowing through the ditch at any point on said lands where he might desire to turn it for irrigating purposes during the spring and summer months, and that S. would not sell or dispose of the ditch and water right to any one else, but that they would revert and become the property of B.: held, that by a fair construction of the arrangement between B. and S., in view of the circumstances of the transaction, the former was to have the use of the water whenever required,

for the use of his premises for the purposes mentioned, and the latter was to have the use of it at all other times for the purpose of working his mining ground.

ID. — *Held, further,* that S. having subsequently sold his mining ground and interest in the ditch, and H. having, by mesne conveyances from S., succeeded to the same, and he and his grantors having used the water conveyed through said ditch for the purpose of operating in the said mining ground with the knowledge and acquiescence of B., that the latter was not entitled to claim a forfeiture of the said ditch and water right on account of the said sale by S.; that B.'s acquiescence in the sales and transfers of the ditch and water right must be deemed a waiver of the condition that S. would not sell them.

ID. — *Held, also,* that the use by H. and his grantors of the ditch and water to operate the mine, although it extended beyond the period of the statute of limitations, would not constitute such an adverse possession against B. as would bar his right to the use of the water, under the reservation in the license to S. to construct the ditch, unless H. and his grantors had wholly excluded B. from the exercise of such right during such period; and that evidence of B. having used the ditch and water a portion of each year during the whole time referred to, for irrigating his land, and for the other purposes mentioned, disproved any such exclusive use thereof as suggested, or any use inconsistent with said license and reservation.

ID. — *Held, too,* that B. and H., and those holding under H., had coexisting rights in the ditch and water; that B. had the preference during the season when the condition of his premises were such as to require the use of the water for the purposes mentioned, but that he had no right to waste it at any time, or to use it extravagantly or imprudently; that H. had the full and free right to use it at all other times, and that each was required to respect the rights and interests of the other regarding the matter, in every particular.

APPEAL from the Circuit Court for the county of Jackson.

*J. R. Neil, H. K. Hanna,* and *E. De Peatt,* for Appellants.

*P. P. Prim* and *H. Kelly,* for Respondents.

THAYER, C. J. — This appeal is from a decree rendered in a suit brought by the appellants against the respondent, to enjoin him from diverting water from what is now known as Walker Creek, — formerly Phillips's Creek, — in the county of Jackson.

The appellants alleged that they were owners and in the possession of certain mining claims which they had

been working during the mining seasons since 1876, and that in so doing they had necessarily required and used all the water of said creek; that they and their grantors, about the year 1865, dug and constructed a ditch in said county, known as the "Willow Springs Mining Ditch," and thereby appropriated all the water of said creek at a point above the residence of the respondent, and running thence in a northerly direction along the foothills above Willow Springs to what is known as Hite's Gulch, thence to their said mining ground, and each and every year had, by means of said ditch, conveyed all the water of the creek and said gulch, and the other gulches running into said ditch, to their said mining claims, and used the same for mining purposes thereon, and by so doing had acquired a prior right over respondent to the use and enjoyment of said water; that for more than twelve years, appellants and their grantors had been in the adverse, exclusive, and uninterrupted use and enjoyment of all of said water for mining their said claims, with the knowledge of said respondent; that on the first day of April, 1887, while appellants were in the possession and use of the said water as mentioned, the respondent wrongfully and maliciously diverted it from said ditch, thereby depriving appellants of its use and enjoyment, and still continued to do so, and refused to desist therefrom, to the great and irreparable injury of the appellants.

The respondent denied all the material allegations of the complaint except as admitted in his further and separate answers thereto, and alleged in said further and separate answers:—

1. That at the time said ditch was constructed and the water of said creek appropriated and used through the same, and for a long time prior thereto, the respondent was the owner in fee of a large tract of land, consisting of agricultural, meadow, and pasture lands, on which there were

valuable improvements, and upon which the respondent reared and kept a great many head of horses, cattle, sheep, and hogs; that the water of said creek flowed through said lands of respondent, near his residence thereon, in a natural channel, at the time the ditch was constructed and the water appropriated, and had done so for a long time prior thereto, and was at the time of its appropriation through said ditch, and had been for a long time prior thereto, appropriated and used by the respondent for irrigating his crops grown upon said lands, watering his stock, and for domestic purposes about his house, and was valuable to him and necessary for the several purposes mentioned; that at the time mentioned in the complaint as the time of the appropriation of the water of the creek by the appellants and their grantors, one Jack Sears, in consideration that the respondent would permit him to dig and construct the ditch through the respondent's lands, promised and agreed with the respondent that the latter should have the exclusive use of the water flowing through the ditch, at any point on his premises which he might desire, to turn it out for irrigating purposes during the spring and summer months; and that, in accordance with said agreement, the respondent has so turned the water out of the ditch, and appropriated and used the same for irrigating purposes upon said lands, each and every spring and summer since the ditch was constructed, and the water thereby appropriated, as he had a right to do under said agreement with the original appropriator of said water; and the respondent has so appropriated and used said water as mentioned without hindrance or objection from any one until the commencement of the suit by appellants; and that the acts complained of by them in their complaint were the turning of the water out of the ditch by respondent in the month of April, 1887, for the purposes of such irrigation.

2. That respondent has had the adverse, exclusive, and uninterrupted possession and use of said water through said ditch for irrigating purposes every spring and summer since the ditch was constructed, and such possession and use thereof in its natural channel long prior to the construction of the ditch and for more than twenty years before the commencement of the suit.

3. That in addition to the premises mentioned as having been made by said Sears in consideration of the respondent permitting him to dig and construct the ditch through the respondent's land, Sears promised and agreed with the latter that whenever he got done with using the water through the ditch, he would not sell or dispose of the ditch or water right to any one else, but that the ditch and water should revert and become the property of the respondent, and that Sears long since got done with using the ditch and water.

The appellants demurred to the new matter contained in the answer as not being sufficient to constitute a defense. The court overruled the demurrer, and the appellants filed a reply specifically denying said new matter. The case having been heard by the circuit court upon depositions and proofs taken therein, a decree was given dismissing the complaint, which is the decree appealed from.

I think the evidence fully sustains the allegations of new matter in the answer as to the agreement and circumstances under which the ditch was constructed and the water for the use of the mining claims thereby appropriated; also as to the reservation made by the respondent of the use of the water of the creek for the purpose of irrigating his land during the spring and summer months, and of his custom and habit of using it during such periods for the purpose mentioned, and for such other purposes as he might desire to use it about his premises.

The situation of the creek, its importance as a means of irrigation, and its necessity in many other respects, are so apparent that no man of any prudence would permit its waters gratuitously to be appropriated without making such a reservation as claimed.

It is easy to see how a person situated as the respondent was could be induced to allow another to construct a ditch across his land and use it to conduct water to mining grounds during a period of the year when he himself did not need it; but it would be difficult to understand why he would do so at a time when it was highly necessary that he should have the water for his own use, unless he granted the privilege for a consideration which he deemed sufficient to remunerate him for the injury and inconvenience he would thereby necessarily subject himself to.

The respondent seems to have been willing that Sears should have the right to use the water during the time he did not need its use, and I think we may reasonably conclude from the testimony and the circumstances surrounding the affair that the arrangement between the parties was to the effect that Sears was to have the right to use the water at all times during which the respondent did not require it for irrigating his land, watering his stock, and for domestic purposes about his house.

The respondent claims that the agreement between him and Sears was, that the latter should not sell or dispose of the ditch and water right to any one else, but that both should revert to him when Sears got done with using the water through the ditch.

Sears, however, in 1867, sold his mining ground, together with the ditch and water right, to certain Chinamen, who, in 1876, sold to Thomas Chavener, and the latter, in 1886, sold to B. W. Huston, one of the appellants; and the said respective grantees have been using

the water and ditch ever since, and the respondent has acquiesced in such use; besides, the license, after it was executed, created a right of property.

Under these circumstances, therefore, the respondent at this late date would not, it seems to me, have any right to claim a reversion of the property in consequence of its alienation. I think we may infer, after the lapse of so long a time, that the respondent consented to the transfer.

A person will not be allowed to avail himself of a forfeiture of valuable rights unless he claims it immediately on the happening of the condition upon which it depends. He cannot remain passive in such a case for a long time after acts have transpired upon which others have relied in matters of importance to them, and then enforce a forfeiture in consequence thereof.

If the respondent had desired to avail himself of the benefit of the condition in the agreement with Sears, upon the happening of which the ditch and water right were to revert to him, he should have claimed it immediately after the sale to the Chinamen. Instead of doing that, however, he allowed the affair to run along about twenty years without any apparent objection, and then insisted upon his right to the reversion, which he has himself forfeited by his own laches. But it does not follow that the appellants acquired any right in the ditch and water superior to that which Sears himself had. The interest of the latter therein was limited by the terms of the license or privilege, and he could convey no greater right than he possessed, whatever he may have undertaken to do. Nor could purchasers from his grantee acquire any right beyond that unless they could show that the respondent in some manner had represented that the grantee was the absolute owner of the property, and that they had been induced to make the purchase upon the faith of such representation.

The case is not like that of a sale of real property to a *bona fide* purchaser, where an outstanding equity exists. Sears had no deed from the respondent of any interest in the ditch, and a purchaser from him was bound to inquire as to the extent of his interest.

The appellants allege in their complaint that for more than twelve years they and their grantors have had the adverse, exclusive, uninterrupted use and enjoyment of all the water of the creek, and used it for their mining claims with the knowledge of the respondent. They claim, I suppose, that they have maintained such adverse possession ever since the execution of the deed by the Chinamen to Chavener.

The latter, however, only had such right in the property as he acquired from the Chinamen, which was no greater right than Sears possessed, and was all that he was able to convey, or had any right to undertake to convey, although the deed executed by him purports to convey the absolute title to the ditch, and contains a general covenant of warranty.

An assumption, however, upon the part of the grantor to convey a greater interest in property than he possesses will not effect a transfer of it, nor extinguish outstanding rights of the character of those in question.

The appellants must therefore rely wholly upon their claims of adverse possession, in order to defeat the right of the respondent to use the water from the ditch in the manner mentioned. And I do not think they can establish it under the circumstances of this case, unless the respondent had actual knowledge that the appellants claimed to be the absolute owners of the ditch and water right, or had knowledge of facts from which such a claim would necessarily be inferred. They must certainly prove more than the fact that they have conducted the water through the ditch, and used it in their mining operations dur-

ing the period alleged, as such use was entirely consistent with the license. The proof must establish an exclusive use of the water under a claim to so use it, regardless of the reservation in favor of the respondent in the agreement between him and Sears, under which the latter was permitted to construct the ditch; and I have strong doubts about the appellants being able to maintain that it is sufficient for that purpose.

The evidence shows beyond question that the respondent has been accustomed to use the water from the ditch for irrigating his lands and for the use of his premises generally every year since the ditch has been constructed; that his use thereof has been openly and notoriously exercised under a claim of right as original owner of the water.

The appellant's counsel appear to be under an impression that if the appellants have been in the use and enjoyment of the ditch under a claim of right for a period beyond that of the statute of limitations, they have acquired a title to it by prescription, and that such title is necessarily exclusive of any right on the part of the respondent to use the water thereof. They seem to ignore the fact that the appellants and the respondent may both have rights to use the water. It seems to me that there is nothing inconsistent in the view that the appellants may have the right to use the water for mining purposes, and the respondent the right to use it for irrigation, for the use of his stock, and for household purposes; and that both rights may coexist. That seems to have been the understanding in the outset, and I do not see how time and usage have changed it; nor can I discover how the affair can be better adjusted than to accord to the respective parties the right to use the water in the manner suggested.

According to my view of the matter, the respondent should have the use of it when necessary for the purposes mentioned, and the appellants should have the right to

use it at all other times.  There may be a short period during each year when both parties may desire to use the water at the same time; in such case, the respondent should have the preference; but he should not be allowed to waste it, or to use it imprudently, or to any greater extent than is actually necessary.  The exercise of a reasonable spirit of accommodation by the respective parties in regard to the use of the water will render it beneficial to both, and will to a great extent avoid a conflict of interest.

The appellant alleges in his complaint, as has been shown, that the respondent, on the first day of April, 1887, wrongfully and maliciously diverted the water from the ditch, and deprived the appellants of its use and enjoyment, and still continued to do so, and refused to desist therefrom.  If I believed that the evidence in the case sustained this allegation, I should be in favor of perpetually enjoining the respondent from the commissions of such acts; but the evidence of William Cook shows that all the water that was taken out of the ditch at that time was for the purpose of irrigating a crop of alfalfa, and that if it had not been so used, the respondent would not have had a crop; that it was young alfalfa, sown the spring before; that there were about five acres of it, and that it required more water than old alfalfa does; and I cannot find from the appellants' brief that any testimony was given on their part in regard to the matter.

The appellants' counsel, it would appear, were too intent upon establishing an exclusive right in behalf of their clients to the use of the water to show what acts the respondent did on that occasion beyond the fact that he diverted it from the ditch.  But that, as I view the case, is not sufficient.  The appellants have acquired no such right, and should not insist upon it until the right which the respondent reserved to himself, when he permitted the ditch to be constructed, is lawfully extinguished.

The decree appealed from must be affirmed.